*41 OPINION ofthe Court, by
Judge Bibb.
Williams ¿appeals from a decree of the circuit court of Lincoln, dismissing his bill exhibited, to háve relief against an *42 elder.grant obtained by the appellees for the land in cost” troversy. The appellant claims under a village right, located to adjoin Hugh M’Gary ; the certificates and entries exhibiting a view of the appellant’s claim are as follows :
⅝ Certificate and entry of actual fettler ihall be taken together. —Consilla vs, Brifcoty Hughi 45 — Craig and Mosby *us« Co-gar, Har, 385, —Mojby and Craig vs. Car-land, May 3d, 1809.
Entry to adjoin fettlement and preemption be. fore the preemption was located, fhall attach to fettlement only.— See Craig vs, Machiry ante 10
A villager snuft prove the notoriety of ¡m-provement called tor in his location — Ho-thaway versus Forbes, poji McClure versus IViniock, pofe Fraz ier vs. Steele Pr. Oec. 395-— Lee 'os. IVallf Har. 450.
*42 “ October 27th, 1779 — Hugh M’Gary this day claimed a settlement and pre-emption to a tract of land lying about six miles from Harrodsburg, known by the name of the Shawnee Springs, by settling the said land and raising a crop of corn in the year 1776. Benjamin Davis contested the claim by James Harrod, &c. Sundry witnesses were sworn and examined, in consideration of which the court are of opinion, that the said M’Gary, has a right to a settlement of 400 acres of land, including said improvement, and a pre-emption of 1000 acres of land adjoining, and that a certificate issue for the same,” &c.
“November 3d, 1779 — Hugh M’Gary enters 400 acres by certificateforsettlement, about six miles from Har-rodsburg, known by the name of the Shawnee Spring.”
“ February 24th, 1780 — Peter Casey, by Isaac Hite, this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, on account of raising a crop of corn in the country in the year 1776, lying on the waters of Shawnee run, adjoining Hugh M’Gary’s settlement on the west, to include his improvement : satisfactory proof being made to the court, they are of opinion that the said Casey, has a right to a settlement of 400 acres of land, to include the said improvement, and the pre-emptioft of 1000 acres adjoining, and that a certificate issue accordingly.”
“ March 2d, 1780 — Peter Casey enters 400 acres in Kentucky by virtue of a certificate, &c. lying on the waters of Shawnee run, adjoining Hugh M’Gary’s land on the west, to include his improvement.”
“ June 26th, 1780 — Peter Casey, Jun. enters 1000 acres upon a pre-emption warrant, No.-- on the waters of Shawnee run, adjoining his settlement on the southwest, and north sides.”
M’Gary’s claim before the commissioners was granted to include his improvement-, although he had claimed the Shawnee Springs. The certificate itself shews that a controversy arose, and was decided by examination of sundry witnesses in the court of commissioners. In *43 trying whether M’Gary or Davis had the prior improvement on the same land, it would be but a fair and rational supposition, that the court, and those present at the controversy, understood the situation of the respective improvements ; and hence a strong presumption arises in favor of the notoriety of the improvement of M’Gary, who must have established his improvement, as he prevailed in the contest. And this presumption is fortified by other evidence in the record. It is very satisfactorily evidenced, that the Shawnee Springs were notorious at, before and after the entry of M’Gary’s certificate of settlement right, with the surveyor. But the circuit court supposed there was a confiiction between the certificate and entry; that they were irreconcilable, and that the mind was left in doubt whether more than one of the springs mentioned in the certificate, were to be included in the location, and if but one, as called for in the entry, which one that was. The principle assumed by the decree is well settled, that the certificate of settlement right and the entry thereof with the surveyor are to be taken together. By doing so the doubt and uncertainty supposed by the decree will be removed. Although the claim was made for a tract of land settled and improved, and known by the name of the Shawnee Springs, yet when the claim is granted, it is not to include the Springs, but to include the improvement. When the entry is taken in conjunction with this call, and applied to the testimony of M’Gary’s having improved at one of the springs, no doubt can remain but that the spring at which he had improved, was the one intended in the entry, he being bound to include his improvement.
That the wit-nefs underfeed an improvement to be the improvementof P. C. not juffi. cient evidence ofnotoriety,nor that he always confedcredit fo ; it ought to be generally fo un. derftood and called by others acquainted in that part of the country.
Pofetive evidence of notoriety counteracted by other evidence. • Mf Clure vs. Byne9 pefe mu Jon vs, M'Gbet9 ante 34' — Speed vs% fViljon3i Pr* Dec, 93.
Entry by P. C.to join Hugh M’Gary on the weft, and include his improvement, not fuftained for want of improvement.
Same principle, Neale vs, Galloway, fall term zSro, and cafes there cited.
The entry of M’Gary, therefore, should be surveyed around “ the upper Shawnee Spring, above the old mill,” as so designated on the plat; with lines to the cardinal points, and the improvement at the intersection of the diagonals of a square area of 400 acres.
As M’Gary had not'located his pre-emptive right previous to the entry of Casey’s settlement right, the call of that entry to adjoin Hugh M’Gary’s land, must be considered as alluding to M’Gary’s settlement only. This doctrine is settled in the cases of Harrod's heir and Crow's heirs—Ward and Kenton vs. Lee, assignee of Young—Craig vs. Machir.
*44 The reasoning of the circuit court is conclusive, that the improvement claimed by the complainant as Casey’s, and sworn to as such by Patrick Jordan and Evangelist Hardin, was never generally known, but was, on the contrary, hid in obscurity until many years had elapsed after Casey’s entry was made. But now it is contended that an improvement at the spring represented on the plat as the complainant’s, is established as Casey’s, and as having been called and generally known as his, previous to the date of his entry and ever since. The depositions of Denton Yoeom, Patrick Jordan and Roger Patton, are those from which it is supposed the notoriety of this improvement is to be inferred. Denton says, “ that sometime before the commissioners sat in this country, he saw a small patch of corn growing about a hundred or a hundred and fifty yards from the spring, near which the complainant now lives, and that he always understood that to be an improvement of Peter Casey, and always thought that to be the improvement by virtue of which the complainant held the land upon which he resided.” But from whom he understood it, he does not say, nor that it was generally so understood or called by others acquainted in that part of the country. Yocom says, “in the spring of the year 1780, he saw hills in which it appeared corn had grown the preceding season, near the spring of the complainant, and until very lately, he always considered that the improvement by virtue of which the complainant held his present tract of land was made at that place.” It appears that he was not at the improvement earlier than the spring of 1780, or if he was, he has not said so ; but why he considered that as the improvement by which the complainant claimed, he has not told ; it may have been barely from the suggestion of his own fancy, without any reason, and confined to his own brain. Jordan does not swear that Casey had any improvement at this spring, but expressly swears to the notoriety of another improvement, as Casey’s ; which however is not credible, as well on account of his relation of the matter, as of other countervailing evidence. He gives no account of the cornhills or other improvement at or near this spring, but says it was a common stopping place between Harrod’s landing and Harrodsburg, and thence he draw an inference that the other improvement, three quarters of a mile distant, was *45 notorious. Now surely if this improvement, where com had been planted, was known as Casey’s, Jordan might have said so : he has not said so, but sworn to the notoriety of another as Casey’s. Patton speaks of having seen this spring about the first of March 1780, and af-terwards. He says there was some appearance of an improvement, of an encampment, and some brakes which he supposed had been used for breaking nettles, and timber had been cut there. From the spring, as a common stopping place, sometimes called Williams’s Spring, “ perhaps sometimes Casey’s Spring,” but of the last the witness is not certain, and does not say when or by whom, and by some a Shawnee Spring, from the com hills and nettle brakes, the complainant would have it infered, that the improvement was notorious as Casey's. Bat Patton expressly declares he has no recollection that he ever heard of Casey’s having an improvement there. Simeon Moore, who was acquainted on Shawnee run, and lived in the neighborhood from 1776, upwards, for many years, declares he never heard of Casey’s having an improvement in the neighborhood, except at the Pond Spring, which is not represented on the plat. In short, many witnesses other than those above named, have been examined, and none of them disclose any knowledge of Casey’s improvement, although well acquainted in that quarter and neighborhood before the date of Casey’s entries. It was supposed by the complainant’s counsel, that the corn hills and growing corn, spoken of by the witnesses, were circumstances strongly conducing to affix Casey’s settlement to that improvement. But the certificate or entry has not described the species of improvement: raising.com was part of the service for which the certificate' was granted ; but not for raising corn on the land granted, but in the country at large, somewhere and anywhere. Besides, the certificate says the corn was raised in 1776 ; Yocom and Denton speak of corn raised in 1779. Who improved at this spring, or raised the corn there, and made the brakes and cut the timber, we know not, except that Chaplin says he assisted Glenn to make an improvement near there in 1774. Casey did not improve there ; he was not in the country previous to the dates of his entries, nor does it appear that anyone made the improve-» xnent for him, or that it had acquired a general reputa *46 tion as his. It does not appear that any improvement *lac* acquired general reputation as Casey’s ; much less that the improvement at or near Williams’s Spring, as contended for in the appellate court, after abandoning the one claimed in the court below, had acquired that degree of notoriety which would have led an enquirer to the north of M’Gary, instead of to the west, er to look on the waters of Salt river, instead of Shawnee run. Without the improvement of Casey, his settlement entry, and consequently his pre-emption entry, must be declared invalid, according to the principles decided in the cases of Craig and Johnson vs. Doran and Ashley, Craig vs. Machir, Wilson vs. M'Gee, Ward and Kenton vs. Lee, assignee of Young, and Cox vs. Smith. The decree of the jircuit court in dismissing the bill is correct.-Decree affirmed..